DECISION
{¶ 1} On January 3, 2002, relator, Mary Dismuke, filed this original action seeking a writ of mandamus directing respondent Industrial Commission of Ohio ("commission"), to vacate its order denying relator's application for permanent total disability ("PTD") compensation, and to issue a new order either granting her application, or an order which complies with State ex rel. Noll v. Indus. Comm.
(1991), 57 Ohio St.3d 203.
 {¶ 2} On February 6, 2002, relator's complaint was referred to a magistrate of this court, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who later rendered a decision and recommendation which included comprehensive and specific findings of fact and conclusions of law. (Attached as Appendix A.) Particularly, the magistrate analyzed the record and the briefs of the parties and concluded that this court should deny relator's request for a writ of mandamus as the commission's decision denying relator's request for an award of PTD compensation is based upon some evidence in compliance withNoll, supra, and State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. The matter is now before the court upon relator's objections to that decision.
 {¶ 3} Having thoroughly reviewed the issues, we find relator's objections to the magistrate's decision convincing. The staff hearing officer ("SHO") expressly relied upon the report of Dr. Douglas C. Rist, who specifically opined that the relator was not able to return to her former position of employment, or "her occupation in factory work," due to the allowed conditions in her claim. Dr. Rist found that relator could not stand for more than three hours at a time and could not lift, carry, push, pull, or otherwise move any object weighing more than twenty pounds. He also concluded that relator could not climb stairs or ladders, and could not crouch, stoop, bend or kneel. Nevertheless, the SHO concluded that relator was capable of returning to her former position of factory employment with respondent employer, and particularly the last position relator held with respondent employer working on an assembly line.
 {¶ 4} In light of this inconsistency, we sustain relator's objections to the magistrate's July 18, 2002 decision and issue a writ of mandamus ordering respondent commission to vacate its order which denied relator's application for PTD compensation and either seek a clarification of Dr. Rist's report, and/or enter an order either granting or denying relator's application, which compiles with this decision and the requirements contained in Noll and Stephenson, supra.
Objections sustained; writ granted.
BRYANT, J., and TYACK, P.J., concur.
 APPENDIX A IN MANDAMUS {¶ 5} Relator, Mary Dismuke, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that she is entitled to PTD compensation pursuant to State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. In the alternative, relator requests a writ of mandamus ordering the commission to vacate its order denying her application for PTD compensation and ordering the commission to issue a new order, either granting or denying the requested compensation, which complies with the mandates of State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
Findings of Fact:
 {¶ 6} Relator sustained a work-related injury on February 9, 1994, while employed as an automobile assembler for relator. Her claim was allowed for: "Strain right knee; contusion coccyx; aggravation of pre-existing osteoarthritis right knee and lumbar region; strain lumbosacral."
 {¶ 7} On July 21, 1997, relator filed an application for PTD compensation. Relator submitted the June 20, 1997 report from Dr. George Smirnoff where he opined as follows:
 * * * This person suffered injury to the soft tissue and supportive structures of her knee and low back. Based on the history of complaints, physical examination and the fourth edition of the AMA Guidelines, it presents her with a permanent impairment which is chronic and ongoing and has been sufficient to disable her totally from her previous occupation or any other reasonable occupation since 1994. It is my opinion that since these injuries are chronic and progressive, it is reasonable to consider this person permanently and totally disabled, taking into account her age, education and work experience and that she is permanently unable to engage in any sustained remunerative employment. A physical capacity evaluation worksheet is enclosed with her restrictions.
 {¶ 8} Relator was examined by commission specialist and orthopedist, Dr. Douglas C. Rist, who issued a report dated December 8, 1997. Dr. Rist opined that relator had reached maximum medical improvement, assessed an eight percent impairment of the whole person based on the allowed conditions, concluded that she was not capable of returning to her occupation in factory work, but that she was capable of sustained remunerative employment within the restrictions he noted on his occupational activity assessment. Dr. Rist opined that relator was unrestricted in her ability to sit, could stand for 0-3 hours and could walk for 3-5 hours; was unrestricted in her ability to lift, carry, push, pull or otherwise move up to 10 pounds and could lift, carry, push, pull or otherwise move up to twenty pounds for 0-3 hours. Relator was also precluded from climbing stairs and ladders, using foot controls, crouching, stooping, bending, moving, and reaching at floor level; could occasionally lift at knee level; was unrestricted in her ability to handle objects as well as reach overhead and at waist level.
 {¶ 9} Relator also submitted several reports from Dr. Dean W. Erickson, including his report dated November 4, 1997. Within that report, Dr. Erickson made the following comments:
 When seen by myself for an independent medical evaluation on November 27, 1996, it was felt that all of her allowed conditions had reached maximum medical improvement. It was felt that she was incapable of returning to her former position of employment without restrictions due to continued deterioration over her two years of disability. This was due primarily to her overweight condition, her physical deconditioning and her chronic degenerative conditions.
* * *
 * * * She has moderately severe symptom magnification behavior indicators including involvement in an inappropriate treatment program, perception that the pain is a result of the injury, disability and work absence greater than warranted for condition, reported pain level inconsistent with direct observations of patient and pain behavior and non-physiologic findings including four of four Wadell's signs on exam.
* * *
 * * * Ms. Dismuke currently suffers from the disability as noted above. Her medical conditions are [as] follows:
 1) Chronic right knee pain. A history of a right knee strain which has resolved;
 2) Chronic regional lumbosacral spine pain secondary to degenerative disc disease and degenerative arthritis with contributing factors of chronic physical deconditioning, her overweight condition and moderately severe symptom magnification behavior;
 3) Severe respiratory impairment related to her chronic asthmatic condition;
4) Chronic gastrointestinal condition.
* * *
 * * * As stated above, Ms. Dismuke has significant, non-allowed and unrelated conditions that are causing her disability at the present. This includes her severe gastrointestinal disease requiring multiple medications and her severe respiratory condition requiring multiple medications. These in and of them self would be disabling. In addition, Ms. Dismuke has significant physical deconditioning, a chronic overweight condition and significant symptom magnification behaviors all of which are contributing to her disability at the present time.
 * * * Ms. Dismuke is not medically able to return to her former position of employment at this time.
 * * * Ms. Dismuke's inability to perform sustained remunerative employment at this time is NOT solely as a result of the allowed conditions in this claim.
 * * * Ms. Dismuke's inability to engage in or perform sustained remunerative employment at this time is due to the unrelated conditions of her chronic respiratory impairment, her chronic gastrointestinal impairment as well as the natural course of her underlying degenerative joint disease and degenerative arthritis effecting her right knee and her lumbar region beyond which is considered in the allowed condition of "aggravation of pre-existing arthritis of the right knee and lumbar region."
 {¶ 10} Relator submitted the July 17, 1997 vocational report prepared by Daniel Simone, M.Ed., CRC, CDMS. Mr. Simone concluded as follows:
 According to the medical information reviewed Ms. Dismuke is experiencing marked limitations in her back and in her right knee as a direct result of her compensable injury. She would have difficulty tolerating the prolonged standing, walking or carrying requirements of light duty work. In addition, she would have difficulty tolerating the sitting requirements or dexterity requirements of many sedentary jobs. Ms. Dismuke has been employed in laboring positions her entire work life. Although they were physically demanding they did not enable her to acquire any work skills. In addition, she is 59 years of age and has extremely limited academic capabilities. Given these factors she would not be considered an appropriate candidate for any type of retraining. Therefore, as a result of her inability to return to any type of laboring position, her lack of any transferable work skills, her inability to meet the demands of a full range of sedentary work activity, her limited education, her prolonged absence from the work force and the current labor market Ms. Dismuke has experienced an almost total reduction in her ability to engage in sustained remunerative employment.
 {¶ 11} An employability assessment report dated January 27, 1998, was prepared by Janice Gruhn, M.Ed., CRC, CDMS, on behalf of the commission. Based upon the report of Dr. Smirnoff, Ms. Gruhn opined that relator had no employment options. Based upon the report of Dr. Rist, Ms. Gruhn opined that relator could immediately perform the following jobs: "[E]lectronic component processor, stamping mill tender, mixer operator coffee roaster, filling machine tender, potato chip frier, shredder operator, addresser, sorter." Following appropriate academic remediation, Ms. Gruhn opined that relator could perform the following additional jobs: "[W]ith academic remediation: auction clerk, check cashier, telephone solicitor, order clerk, identification clerk, document preparer, election clerk, animal shelter clerk."
 {¶ 12} Relator's application was heard before a staff hearing officer ("SHO") on May 7, 1998, and resulted in an order granting her PTD application.
 {¶ 13} The employer filed a mandamus action in this court and this court granted a limited writ of mandamus ordering the commission to vacate its order granting relator PTD compensation and ordering the commission to issue a new order, granting or denying such compensation, after citing the evidence relied upon and giving an explanation for its decision that meets the requirements of Noll, supra.
 {¶ 14} After remand from this court, relator's application for PTD compensation was heard before an SHO on August 10, 2000, and resulted in an order denying her PTD compensation. The SHO based his decision particularly upon the reports of Dr. Rist and the employability assessment prepared by Ms. Gruhn. The SHO concluded that relator could perform some sustained remunerative employment within restrictions noted by Dr. Rist. The SHO discussed the November 10, 1997 report of Dr. Erickson, noting that Dr. Erickson was of the opinion that any inability of relator to work was due to the unrelated conditions of her chronic respiratory impairment, her chronic gastrointestinal impairment as well as a natural course for underlying degenerative joint disease and degenerative arthritis affecting her right knee and lumbar region beyond which is considered in the allowed condition. The commission then noted the nonmedical disability factors, noted further that relator had refused to participate in any rehabilitation or retraining programs, and noted that relator has not had any surgeries. The SHO concluded as follows:
 Based upon the allowed conditions in the claim, the medical and nonmedical disability factors, it is the finding of the Staff Hearing Officer that the Claimant is capable of engaging in sustained remunerative employment. While the Claimant may be unable to do heavy or medium work, at this time she is capable of performing sedentary or light work. With some physical therapy and vocational training, she most likely would be able to perform medium work. Although the Claimant is 62 years old her age is not a complete bar to employment. Also, she can secure entry level employment in such occupations as electronic component processor, stamping mill tender, mixer operator, coffee roaster, filling machine tender, potato chip fryer, shredder operator, addressor and sorter. Additionally, with some academic remediation she could perform the duties of check cashier, order clerk, identification clerk, and animal shelter clerk.
 Therefore, for all the foregoing reasons and findings it is the order of the Staff Hearing Officer that the Claimant's application for permanent and total disability benefits filed 07/21/1997 be denied. * * *
 {¶ 15} Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 16} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v.Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v.Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 17} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 18} In this mandamus action, relator contends that the commission's order denying her application for PTD compensation was based, in part, upon several key mistakes of fact. Relator contends that the commission erred in concluding that the last job that she performed was a light duty job within the restrictions noted by Dr. Rist. Further, relator contends that there is no evidence in the record to support Dr. Erickson's conclusion that her inability to work, at this point in time, was due to other allowed conditions including respiratory difficulties, gastrointestinal difficulties, as well as the underlying degenerative knee and lumbar conditions which are not allowed in the claim. Further, relator contends that the commission abused its discretion by relying upon the vocational report of Ms. Gruhn as there is no evidence to indicate that the list of potential occupations are even available to relator. Lastly, relator contends that the commission abused its discretion in addressing the nonmedical disability factors. For the reasons that follow, this magistrate finds that relator's arguments lack merit.
 {¶ 19} First, relator contends that the SHO abused its discretion by indicating that the last job she worked was a light duty job and that it could be performed within the restrictions of Dr. Rist. Relator contends that she testified that the mop she used was heavy and that she had to stand for the majority of the day. Although relator did testify that the mop she used was heavy, she was not able to testify as to how much the mop weighed. Upon review of the record, this magistrate finds that there is no evidence in the record demonstrating that relator's former job exceeds the restrictions imposed by Dr. Rist. The commission was within its discretion to conclude that her job, mopping floor pans, was within Dr. Rist's restrictions in the absence of evidence to the contrary. As such, this argument is not well-taken. Relator also contends that the commission abused its discretion by relying upon the report of Dr. Erickson, as there was no evidence supporting his conclusions that her disability was due to nonallowed conditions. A review of the commission's order indicates that the commission expressly relied upon the reports of Dr. Rist and Ms. Gruhn. Although the SHO did mention that Dr. Erickson had concluded that relator had certain other nonallowed conditions which, in his opinion, rendered her disabled. However, the commission did not specifically rely on his report. Based upon the report of Dr. Rist, the commission concluded that relator was capable of performing some sustained remunerative employment. As such, this argument fails as well.
 {¶ 20} Relator also contends that the commission abused its discretion by relying upon the vocational report of Ms. Gruhn when there was no evidence that the jobs Ms. Gruhn indicated that relator was capable of performing were actually available to her. However, the commission is not required to find that there are certain jobs that are currently available to relator. Instead, the commission agreed with Ms. Gruhn's conclusion that there were certain jobs which relator would be capable of performing within the restrictions placed upon her by Dr. Risk. As such, this argument is also not well-taken.
 {¶ 21} Lastly, relator contends that the commission did not properly apply the nonmedical factors. This magistrate disagrees. The commission noted that relator was capable of performing sedentary to light duty work and that, with some physical therapy and vocational training, she would be able to perform medium level work. The commission noted that, at 62 years of age, her age would not be a complete bar to employment. The commission noted that relator could secure entry-level employment jobs such as those listed by Ms. Gruhn in her report.
 {¶ 22} Based on the foregoing, this magistrate concludes that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation, and this court should deny relator's request for a writ of mandamus.